THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTINE HOWARD, As Independent Administrator of the Estate of BRIAN HOWARD, deceased, | ) ) ) | No. 23 C 16477 |
| | ) | |
| *Plaintiff*, | ) | Chief Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| | ) | |
| VILLAGE OF BUFFALO GROVE, IL, et al. | ) ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Kristine M. Howard, as representative of her late son, Brian Howard's, estate, brings claims for excessive force and wrongful death against Defendants Village of Buffalo Grove, Illinois, the Buffalo Grove Police Department (BGPD), and BGPD Police Officers Ross Valstyn and Jon Officer, individually and in their official capacities, under federal and state law. Howard[1] alleges that after her son, Brian Howard called 911, Defendants made no attempts to deescalate his suicidal crisis and used excessive, lethal force, resulting in his death; Howard seeks compensatory and punitive damages. Defendants move to dismiss. (Dkt. 39). For the following reason, the Court grants in part Defendants' Motion. [39].

**BACKGROUND**

The events preceding Brian's death unfolded as follows: On December 2, 2021, at approximately 12:28 am, Brian was in Buffalo Grove, Illinois experiencing suicidal ideation when he called 911 on himself. (Dkt. 30 ¶¶ 15–18). Brian stated that he had two guns on him and was in

---

[1] To distinguish between Kristine Howard and her late son, Brian C. Howard, the Court refers to Kristine Howard as "Howard" and Brian C. Howard as "Brian" for the remainder of the Order.

Mill Creek Park; he explained that he had no intention of hurting anyone except himself. (*Id.*) During the call, Brian told the 911 operator repeatedly that he was suicidal. (*Id.* ¶ 18). Officer Valstyn and Officer Officer arrived at the park at 12:34 am. (*Id.* ¶ 19).

When the officers arrived, they did not wait for assistance. (*Id.* ¶ 20). Instead, the two officers "rushed out of their cars" and "screamed obscenities" at Brian. (*Id.* ¶ 21–22). The officers did nothing to intervene to protect Brian from harming himself. (Dkt. 46 at 2). The officers then each fired their handguns several times at Brian, hitting him in the chest. (Dkt. 30 ¶ 23). Brian died from his gunshot injuries. (*Id.* ¶ 24). Brian did not direct or point any gun at any individuals, including the Defendant Officers, at any time during the Defendant Officers' encounter with Brian. (*Id.* ¶ 25). Brian's death has caused his mother, Kristine Howard, and his surviving family members profound emotional distress, grief, mental suffering, and loss of companionship. (*Id.* ¶ 26).

Howard's three-count Amended Complaint alleges excessive force under 42 U.S.C. § 1983 (Count 1), wrongful death under 720 ILCS 5/7-5(a) (Count 2) against Officer Valsytn and Officer Officer, and a *Monell* claim against the Village of Buffalo Grove and BGPD also under 42 U.S.C. § 1983 (Count 3). (Dkt. 30 ¶¶ 27–58). Defendants move to dismiss. (Dkt. 39).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

The Court will first discuss the video footage attached to Defendants' Motion; next, it will evaluate the excessive force claim under both federal and state law; finally, the Court will consider Howard's *Monell* claim.

### I.      Consideration of Dash-cam Footage at the Pleading Stage

Defendants' Motion is based primarily on extrinsic, dash cam footage from the scene. (Dkt. 40 at 8). It is well-settled that a court may consider extrinsic evidence (such as footage from a body-worn camera) on a motion to dismiss if the plaintiff refers to it in the complaint. *Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024); *Bogie*, 705 F.3d at 609 (citing *Citadel Group Ltd. v. Wash. Regional. Med. Center*, 692 F.3d 580, 590-91 (7th Cir. 2012)); *Flores Delgado v. City of Chicago*, 547 F. Supp. 3d 824, 830 (N.D. Ill. 2021) ("[T]he Court is free to consider any facts set forth in the complaint that undermine the plaintiff's claim. This discretion includes exhibits attached to the complaint such as video recordings attached to or referenced in a complaint.") (cleaned up). The Seventh Circuit, however, has emphasized that "a district court

deciding a motion to dismiss, may not defy the Supreme Court's command to accept all facts in the complaint as true, and instead rely on video evidence unless the video 'utterly discredit[s]' the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depict." *Esco*, 107 F.4th at 679 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Here, the Court is not permitted to consider the footage. First, Howard does not reference the video even once in her Amended Complaint (Dkt. 30). This distinguishes the instant case from circuit precedent in which a court was permitted to consider video evidence at the pleading stage. For example, in *Esco v. City of Chicago*, though the plaintiff did not attach a video in his complaint, he relied on a video in the pleading, which defendants had attached to their motion to dismiss. 107 F.4th at 679. Here, unlike in *Esco*, Howard does not reference the video, and therefore, the court does not have the same leeway as it would if she had referenced it. (*See* Dkt. 30). Second, even if the Court could consider the video in assessing the pleading, the footage does not "utterly discredit" Howard's version of events. Instead, it merely provides details, which are mostly consistent with Howard's version of events. Accordingly, the Court will not consider the video footage in deciding the Motion.

## II. Excessive Force Claim Against Officer Valstyn and Officer Officer

### a. Objective Reasonableness of Officers' Actions

"The Fourth Amendment assures the right to be free from *unreasonable* 'seizures,' a category that includes a law enforcement officer's use of deadly force against a free citizen." *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020) (emphasis added). Section 1983 authorizes private suits to redress deprivations of constitutional rights by state actors. *Id.* at 984. Since "[a] police officer's use of deadly force on a suspect is a seizure within the meaning of the Fourth Amendment," an unreasonable seizure is a violation of the Fourth Amendment

cognizable under § 1983. *Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022) (citing *Ybarra v. City of Chicago*, 946 F.3d 975, 978 (7th Cir. 2020)).

Here, there is no dispute that the officers "seized" Brian when they shot and killed him. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472 (7th Cir. 2015) (use of deadly force is a Fourth Amendment "seizure"). The officers, however, argue that the Fourth Amendment claim against them should be dismissed because his use of force was "objectively reasonable." (Dkt. 40 at 7) (*Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018) (use of deadly force is an unconstitutional seizure if it is not objectively reasonable).

"Whether use of deadly force constitutes a constitutionally reasonable seizure is an objective inquiry and must be 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *King*, 954 F.3d at 984 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Even when less than deadly force was necessary, an officer may respond with deadly force if a person of interest threatens that officer with a weapon. *King*, 954 F.3d at 985; *Biegert v. Molitor*, 968 F.3d 693, 699–700 (7th Cir. 2020).

Though there remains a question of whether the officers were in imminent danger, Howard has presented sufficient facts to move forward with her excessive force claim. (*See* Dkt. 30). According to the Amended Complaint, Brian called the police and told them he was at Mill Creek Park and had two guns. (Dkt. 30 ¶¶ 15–16). Despite knowing Brian was suicidal, instead of waiting for assistance from mental health professionals, the Officers approached and began screaming "commands and obscenities at Brian." (*Id.* ¶¶ 21–22). Eventually, the Officers each fired their handguns several times, striking and killing Biran. (*Id.* ¶ 23). Though Brian had two hand guns, he never pointed them at the officers. (*Id.* ¶ 25). This leaves an open question of whether the Brian truly threatened the Officers. *King*, 954 F.3d at 985.

Furthermore, Brian explicitly stated that he had no intention of hurting anyone but was experiencing suicidal ideation. (*Id.* ¶¶ 17–18). A police officer must consider a subject's mental illness when assessing what sort of force is permissible. *King*, 954 F.3d at 985 ("[O]fficers often should approach persons known or suspected to have a mental-health problem differently from the way they handle those whom they suspect of criminal activity.). There is no indication that the Officers considered Brian's mental illness before "rush[ing] out of their cars" and "scream[ing] commands and obscenities" at Brian. Without additional details, this means officers' use of deadly force may not have been reasonable. Howard has, thus, presented sufficient facts to state an excessive force claim. (Dkt. 30 ¶¶ 21–22).

### b. Qualified Immunity

The officers maintain that even if Howard has stated an excessive force claim against that the Court should dismiss it because the officers are immune under the doctrine of qualified immunity. (Dkt. 40 at 8–9). Government officials like the Officers are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (cleaned up). To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). For the law to be "clearly established, the 'existing precedent must have placed the statutory or constitutional question beyond debate.' " *Price v. McCoy*, No. 19-CV-02560, 2021 WL 5179918, at *8 (N.D. Ill. Nov. 8, 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Further, "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity

grounds . . . [b]ecause an immunity defense usually depends on the facts of the case. . . . ”*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

Here, it is too premature to dismiss Howard's claim against the Officers based on qualified immunity. While we acknowledge that qualified immunity is the "ability to be free from suit . . . and that, therefore, the question of immunity should be decided at the earliest possible stage," dismissing under Rule 12(b)(6), here, is hasty because Howard's claim may hinge on "particular facts" yet uncovered. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000); *see also Munoz v. Bradbury*, 2022 WL 1444282, at *4 (N.D. Ill. May 6, 2022) (declining to dismiss on qualified immunity grounds where "the factual allegations do not paint a sufficient picture to allow the Court to reasonably address the qualified immunity question without the aid of fact discovery"); *Baker v. City of Chicago,* 483 F. Supp. 3d 543, 555 (N.D. Ill. 2020) (same). Howard claims that Brian suffered from mental illness, which made him suicidal. (Dkt. 30 ¶ 51). This, apparently, led Brian to call the police. (Dkt. 30 ¶ 18). Because the events leading up to Brian's death remain unclear, it is too early to dismiss Howard's excessive force claim on qualified immunity grounds.

**III.     Wrongful Death Under Illinois Law Against Officer Valstyn and Officer Officer**

Separately, Defendants also seek to dismiss Howard's claims for willful and wanton misconduct against Officer Valstyn and Officer Officer under the Illinois Wrongful Death Act. 720 ILCS 5/7-5; 740 ILCS 180/1. The Illinois Wrongful Death Act states, "[w]henever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." 740 ILCS 180/1. Typically, "[a] finding that a police officer's use of deadly force was reasonable due to the imminent danger of death or serious bodily injury to

himself or others has been found to foreclose actions based on both the Fourth Amendment and the Illinois Wrongful Death Act." *Lampkins v. Jones*, 2014 WL 12621565, at *4 (N.D. Ill. Nov. 4, 2014) (citing *Muhammed v. City of Chicago*, 361 F.3d 680, 683 (7th Cir. 2002)).

The Illinois Tort Immunity Act immunizes public employees from "his act or omission in the execution or enforcement of any law *unless* such act or omission constitutes *willful and wanton* conduct." 745 ILCS 10/2-202 (emphasis added). "The term 'willful and wanton' includes a range of mental states, from actual or deliberate intent to cause harm, to conscious disregard for the safety of others or their property, to utter indifference for the safety or property of others." *Harris v. Thompson*, 976 N.E.2d 999, 1011 (Ill. 2012); *see also id.* This sort of conduct that "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001). Moreover, "[g]enerally, whether a defendant's conduct is willful and wanton is a question for the jury." *Cohen v. Chicago Park Dist.*, 104 N.E.3d 436, 441 (Ill. 2012); *Prokop v. Hileman*, 588 F. Supp. 3d 825, 845 (N.D. Ill. 2022).

For similar reasons to her Fourth Amendment excessive force claim, Howard has pled sufficient facts to make a claim for willful and wanton conduct. (Dkt. 30 ¶¶ 15–26); 745 ILCS 10/2-202. Howard claims that Brian said he had no intention of hurting anyone and was experiencing suicidal ideation. (Dkt. 46 at 11). When the officers came to the park, they did not try to deescalate the situation. (*Id.* at 12). Never once did Brian point his weapons at the Officers. (*Id.*) While it is certainly possible that the officers' shooting Brian was reasonable under the circumstances, like the excessive force claim, it is too early in the litigation to dismiss Howard's claim. Accordingly, Defendant's motion to dismiss the wrongful death claim is denied.

IV. *Monell/Canton* **Claim Against Village of Buffalo Grove**

Defendants also move to dismiss Howard's *Monell* Claim against the Village of Buffalo

Grove. (Dkt. 40 at 11). To prevail on a *Monell* claim, a plaintiff must show that a municipal policy

or custom caused the constitutional injury. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th

Cir. 2022) (citing *Monell*, 436 U.S. at 694). Further, "[f]or a Monell *claim* to survive a motion to

dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a

constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., 'a policy or

custom'), such that the challenged conduct is properly attributable to the municipality itself'; (3)

'the policy or custom demonstrates municipal fault, (i.e., deliberate indifference'); and (4) "the

municipal action was the moving force behind the federal-rights violation." *Thomas v. Neenah

Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citing *Spiegel v. McClintic,* 916 F.3d 611, 617

(7th Cir. 2019) (cleaned up).

Howard's specific claim against the Village of Buffalo Grove, sometimes also called a

*Canton* claim, is premised on the municipality's failure to train law enforcement on how to handle

a person in a mental health crisis. (Dkt. 30 ¶¶ 50–58). Unlike a traditional *Monell* claim, a *Canton*

claim is not about an affirmative policy, but rather a lack of policy, which causes harm. *J.K.J. v.

Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020). Specifically, "[a] municipality can be held liable

under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless

conduct and there is an obvious need to provide training to avert harm, even if the prior acts have

yet to result in tragedy." *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (citing *City

of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). What separates liability under *Canton* "from

traditional *respondeat superior* liability is a known pattern of tortious conduct demonstrating the

need for additional training, rather than a one-time negligence." *Flores* 997 F.3d, at 733.

Moreover, because it is not enough to merely plead the legal elements of the claim, to get past the pleading stage on a claim against a municipality, a plaintiff must state a sufficient factual basis for her allegations, *McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011). In practice, this mean alleging enough "by way of factual content to 'nudg[e]' " the claim . . . 'across the line from conceivable to plausible.' " *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 680).

Howard claims that the Village "is liable for the failure of its police department to adequately train and supervise officers on how to appropriately respond to individuals experiencing a mental health crisis, particularly those at risk of suicide, including but not limited to the reasonable use of deadly force in responding to and encountering such individuals." (*Id.* ¶ 52). Howard adds that the Village acted with deliberate indifference to its citizens by not providing such training. (Dkt. 30 ¶ 55). This failure to train constitutes an "official Buffalo Grove" policy, practice, and/or custom, (*Id.* ¶ 56), which led to the Defendant Officers' allegedly unjust use of deadly force against Brian. (*Id.* ¶ 57).

Howard's Amended Complaint is too barebones to nudge it from conceivable to plausible. *McCauley*, 671 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 680). Instead of providing even basic details, Howard, citing directly to *Harris*, 489 U.S at 388, makes conclusory legal statements that the Village's inadequate policy training amounts to "deliberate indifference" to the rights of mentally ill people, like Brian, with whom law enforcement come into contact. (Dkt. 30 ¶ 55). Howard cites no other instances in which Buffalo Grove law enforcement encountered someone experiencing a mental crisis and used deadly force. (*See* Dkt. 30 ¶¶ 50–58). Furthermore, Howard alleges no facts that Buffalo Grove had any "actual knowledge" of "a pattern of criminally reckless conduct." *Flores*, 997 F.3d at 733

10

While *Harris* directly supports the notion that "a municipality's failure to train employees can be a basis for 1983 liability,"—to survive a motion to dismiss—such a theory also requires that the "municipality itself demonstrate deliberate indifference" to a risk that the municipality either knew of or should have known of. *Flores*, 997 F.3d at 733. Howard states no facts to support her claim that the municipality knew that failing to adequately train its police force to respond to those "experiencing mental health cris[es]" such that it amounts to deliberate indifference. (Dkt. 30 ¶ 52). Though Howard is correct that *Monell* claims are not subject to a heightened pleading standard, *See White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016), courts must "scrupulously appl[y]" the pleading requirements "to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Neenah Joint Sch. Dist.*, 74 F.4th at 524; *see J.K.J.*, 960 F.3d at 378 (explaining that "the path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous."). Howard's "[t]hreadbare recitals of the elements of the [*Canton* standard], supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. For this reason, Howard's claim against Buffalo Grove fails, and the Court dismisses Howard's *Monell* claim.

Because the Court dismisses the *Monell* claim, it must also dismiss Howard's suit against Officer Valstyn and Officer Officer *in their official capacities*. *Monell*, 436 U.S. at 691. ("A municipality cannot be held liable solely because it employs a tortfeasor"). Because suing the officers in their official capacities means suing the municipality itself, the Court dismisses these claims with prejudice. *Nicholson v. Kramer*, 2021 WL 3367168, at *5 (N.D. Ill. Aug. 2, 2021) (a court cannot hold a municipality liable for an individual employee's wrongdoing).

### V.       Claims Against Buffalo Grove Police Department

Finally, any claims against the Buffalo Grove Police Department are also dismissed with prejudice because a municipal police department is not a distinct suable entity separate from the municipality itself. *Averhart v. City of Chicago*, 114 F. App'x 246, 247 (7th Cir. 2004) (dismissing claims against Chicago Police Department because it was "not a suable entity separate from the City of Chicago."); *Chan v. City of Chicago*, 777 F. Supp. 1437, 1442 (N.D. Ill. 1991) (dismissing claim against city's police department with prejudice because it is legally the same as the city). This means that suing the BGPD is effectively the same as suing the Village itself. Accordingly, the Court dismisses Howard's claims against the Buffalo Grove Police Department.

### CONCLUSION

For the forgoing reasons, the Court grants, in part, Defendants' Motion to Dismiss [39]. The Court denies the Motion as to Howard's excessive force claims against the Defendant Officers under Section 1983 and Illinois law (Counts 1 and 2). The Court dismisses Howard's *Monell/Canton* claim with leave to amend (Count 3). The Court dismisses, with prejudice, Howard's claims against Officer Valstyn and Officer Officer in their official capacities. The Court dismisses also, with prejudice, Howard's claims against the Buffalo Grove Police Department.

_____
Virginia M.  Kendall
United States District Judge

Date: June 26, 2025